THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME FLAGG, Defendant-Appellant.

Fifth District   No. 5—90—0194

Opinion filed August 21, 1991.

Daniel M. Kirwan and Stanley P. Stasiulis, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William R. Pearcy, State's Attorney, of Nashville, and Raymond L. Beck, of Chicago (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOWERTON delivered the opinion of the court:

The parole officer knocked on the door. With him were the Washington County sheriff, a deputy, and also his own brother, who was an agent.

Defendant opened the door. The parole officer said, "Jerome, can I talk to you a minute?"

"Yeah," said defendant.

"We got a call from a confidential source that you have some stolen guns and some stereo equipment, can I come in?"

"Yes," defendant replied.

The parole officer, his brother, the sheriff, and the deputy went inside the house. Defendant did not own this house in Ashley, Illinois; he had "paroled" there, living for a while with his girlfriend and her two children, but they had argued, and he had moved out. He was there that day, babysitting the children.

The parole officer immediately walked through the living room and into the kitchen with defendant, because the informant said the guns might be in the living room. The deputy stayed in the living room; the sheriff and the parole officer's brother followed them to the kitchen.

"Jerome, we have a right to search this house," the parole officer said; then he told defendant that he was going to search the house, but would rather have defendant's permission.

"The gun above the bed is not mine," defendant said.

The parole officer told his brother to check. The brother checked. The gun was there. Defendant was handcuffed and arrested.

The officers searched the house. After most of the search had been completed and the evidence seized, the parole officer gave defendant a consent-to-search form to sign. Defendant signed it.

Charged with unlawful possession of the firearms found in the warrantless search, defendant moved to suppress the evidence. The circuit court refused, ruling that, based on the information supplied by the informant, the parole officer and the police had reason to investigate, and defendant had invited them in and had consented to the search. Defendant was convicted on two counts of unlawful possession of a weapon by a felon (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1) and appeals on four grounds. We need only address one: whether

the search and seizure was prohibited by the fourth amendment to the United States Constitution. U.S. Const., amend. IV.

The State makes three attempts to protect the search and seizure from constitutional attack. It argues: (1) a parole officer has the right to search a parolee's house without a warrant if there are reasonable grounds; (2) defendant consented to the search; and (3) there was no search because the gun was in plain view.

We reverse and remand.

■ The State maintains that the parole officer had a right to visit defendant at his house and conduct a search without a warrant, arguing that defendant, as a parolee, does not have the same expectation of privacy as other citizens and is not entitled to the same degree of constitutional protection from searches and seizures. The State relies on *Griffin v. Wisconsin* (1987), 483 U.S. 868, 97 L. Ed. 2d 709, 107 S. Ct. 3164, which held that a probation officer may search a probationer's home without a warrant where there are reasonable grounds to do so under administrative rules authorizing such conduct. *Griffin* is distinguishable because Wisconsin's parole regulations expressly permit a warrantless search of a probationer's home. In *Griffin*, the Court focused on a Wisconsin Department of Social Services regulation that allowed a probation officer to search a probationer's home without a warrant "as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband." (*Griffin*, 483 U.S. at 871, 97 L. Ed. 2d at 715, 107 S. Ct at 3167.) The Court held that the State regulation satisfied the fourth amendment, because the information possessed by the officer satisfied Federal "reasonable grounds" standards. In the case at bar, however, there is no such regulation. In Illinois, conditions of parole are governed by the Unified Code of Corrections. (Ill. Rev. Stat. 1989, ch. 38, par. 1001—1—1 *et seq.*) Three sections are relevant here.

Section 3—3—7(b)(6) states:

"(b) The Board may in addition to other conditions require that the subject:

* * *

(6) permit the agent to visit him at his home or elsewhere to the extent necessary to discharge his duties." Ill. Rev. Stat. 1989, ch. 38, par. 1003—3—7(b)(6).

Section 3—3—7(c) states:

"The conditions under which the parole *** is to be served shall be communicated to the person in writing prior to his release, and he shall sign the same before release." Ill. Rev. Stat. 1989, ch. 38, par. 1003—3—7(c).

Section 3—3—7(d) states:

"[T]he Prisoner Review Board may modify or enlarge the conditions of parole ***." (Ill. Rev. Stat. 1989, ch. 38, par. 1003—3—7(d).)

Defendant's conditions of parole were given to him in writing and signed by him. These conditions did not contain permission to search his house without a warrant, and the Prisoner Review Board neither enlarged nor modified the conditions of defendant's parole to include the warrantless search of his house. The Prisoner Review Board could have imposed as a condition of parole that defendant permit a parole officer to visit him at his home "to the extent necessary to discharge [the parole officer's] duties," but did not.[1] *Griffin*, therefore, does not apply.

We then are presented with the question whether the warrantless search of defendant's house was prohibited by the fourth amendment. The Wisconsin Supreme Court in *State v. Griffin* (1986), 131 Wis. 2d 41, 388 N.W.2d 535, held that the fourth amendment did not bar a search of a probationer's house, a holding perhaps properly characterized as one more chunk of ice thrown into the gathering, rapidly moving, and deeply chilled current of cases that lap at freedom's bank; but the United States Supreme Court refused to allow itself to be pulled into that current. It stayed on the bank, pointing out that the Wisconsin analysis made new constitutional law, and instead based its own holding on the State regulation. As the Supreme Court stayed on shore, we likewise do, for we are not so intrepid as to jump to the iceflow eschewed by the Supreme Court. In our refusal, we note that all must concede that if defendant had not been on parole, this warrantless entry and search would have been dismissed out of hand. But merely because defendant is a parolee does not mean that he has forfeited all his constitutional rights. *Griffin*, 483 U.S. at 872, 97 L. Ed. 2d at 717, 107 S. Ct. at 3168.

We hold that the status of a parolee is insufficiently different from the status of an unconvicted citizen to warrant allowing the government to ignore the sanctity of hearth and home, intrude at will, and pry into the secrets therein. We are aware of no case from Runnymede, in 1215, to Ashley, Illinois, in 1991, that holds such a doctrine. Had there been such a case we are confident that Mr. Justice Scalia would have found it, cited it, and used it in *Griffin* instead of brand-

---

[1]We express no opinion whether this condition would carry with it the power to search or whether a search incident to such a condition would withstand the demands of the fourth amendment.

ing the proposition "a new principle of law." *Griffin*, 483 U.S. at 872, 97 L. Ed. 2d at 717, 107 S. Ct. at 3168.

■ The State argues, secondly, that defendant consented to the search. We disagree. The fourth amendment and article I, section 6, of the Illinois Constitution (U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6) prohibit unreasonable searches and seizures. With few exceptions, warrantless searches are generally unreasonable and unconstitutional; one such exception is a search pursuant to valid consent. (See *People v. Bayles* (1980), 82 Ill. 2d 128, 411 N.E.2d 1346.) Consent is a question of fact for the trial court, and a reviewing court will not disturb that ruling unless it is clearly erroneous. (*People v. DeMorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1.) We examine defendant's consent.

Here, defendant answered the door of his girlfriend's house where he was babysitting, finding as he did, his parole officer, the parole officer's brother, and two uniformed policemen. The parole officer told defendant he had heard that defendant had some guns and some stolen stereo equipment and asked if he could come in. Once in the house, the parole officer told defendant that they had a right to search the house for guns and were going to search the house for guns, seeking defendant's permission, in effect, only as an unnecessary courtesy. Faced with that, the defendant replied, "The gun above the bed is not mine." At this point, the police searched the house.

More than mere acquiescence to a claim of lawful authority must be shown to establish voluntary consent. (*People v. Johnson* (1981), 99 Ill. App. 3d 863, 425 N.E.2d 1215, citing *Bumper v. North Carolina* (1968), 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788.) The search conducted here was done before consent was given. We have found no case—and we think none can be found—that permits a warrantless search to be ratified by signing a consent-to-search form after the search has, for the most part, been completed.

Furthermore, it is axiomatic that consent must be voluntary. The State argues that telling defendant that they had a right to search and were going to search did not amount to coerced consent. The State relies on: *People v. Magby* (1967), 37 Ill. 2d 197, 226 N.E.2d 33, which held a consent valid where the police told defendant that if he did not permit the search, they would get a warrant; *People v. Zynda* (1977), 53 Ill. App. 3d 794, 368 N.E.2d 1079, which held a consent valid where police told defendant that things would go easier on him if he permitted the search; and *People v. Holliday* (1983), 115 Ill. App. 3d 141, 450 N.E.2d 355, which held a consent valid where the police told defendant that a judge was about to sign a search warrant.

These cases have no application to the facts in the case at bar, because the search in this case was conducted before consent was given. The parole officer told defendant, in essence, that his consent did not matter, and gave defendant a consent form to sign only after the house had been searched, the evidence seized, and defendant placed in handcuffs and forced to sit at the kitchen table.

The State argues lastly that no search occurred because the the parole officer's brother saw the gun in plain view. The State argues that defendant had all but directed the parole officer's brother to the bedroom where the gun was found by pointing to the direction of the bedroom when he said, "The gun above the bed is not mine," and that the parole officer's brother merely looked into the bedroom, saw the gun, and seized it. We are unpersuaded. The parole officer testified that he directed his brother to go to the bedroom to see if a gun was there. This was done immediately after defendant said the gun was not his. Plain view, an exception to the warrant requirement (see *People v. Hebel* (1988), 174 Ill. App. 3d 1, 527 N.E.2d 1367), does not apply to these facts, because the view must take place from an area where the officer has a lawful right to be. (See *People v. Testa* (1984), 125 Ill. App. 3d 1039, 466 N.E.2d 1126.) Although here the parole officer's brother had a right to be in the house—since he arguably had been invited in—he moved at the direction of his brother to an area of the house where he had no permission to go, no lawful right to be, and it was from this place that he saw the gun. See *People v. Freeman* (1984), 121 Ill. App. 3d 1023, 460 N.E.2d 125.

The circuit court is reversed, and this cause is remanded to the circuit court for entry of an order suppressing the evidence and for a new trial.

Reversed and remanded.

WELCH and HARRISON, JJ., concur.