634 A.2d 1093

COMMONWEALTH of Pennsylvania, Appellee,

v.

Robin PICKRON, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert EDWARDS, Appellant.

Supreme Court of Pennsylvania.

Submitted April 8, 1992.

Decided Dec. 2, 1993.

John W. Packel, Chief, Appeals Div., Owen W. Larabee, Asst. Defender, for Robin Pickron.

Charles L. Mitchell, Philadelphia, for Robert Edwards.

Ronald Eisenberg, Deputy Dist. Atty., Catherine Marshall, Chief, Appeals Div. and Kathy L. Echternach, Philadelphia, for the Com.

Before NIX, C.J., FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, and MONTEMURO, JJ.

*OPINION*

NIX, Chief Justice.

Today we review a Superior Court Order reversing the Order of the Court of Common Pleas which suppressed certain items of evidence seized from Appellants' home. The

issue is whether the warrantless search by the parole officers violated Appellants' fourth amendment rights. We hold today that the parole officers did violate their rights and we reverse the Order of the Superior Court.

The credible evidence at the Motion to Suppress established that on March 6, 1989, Pennsylvania State Parole Officers David Guglielmi and James Newton went to the defendant Robin Pickron's apartment armed with a warrant to arrest her for failure to report to the State Board of Parole. Upon their arrival at 6:15 a.m., the agents advised her mother that they intended to search the residence for her daughter. The mother admitted the officers for that limited purpose.

Upon their admission to the apartment, the agents immediately noted that defendant Pickron was "living beyond her means." The agents then began a general search for Pickron in areas large enough to conceal a person. Parole agent Newton searched a small office. He opened a closet door and, after observing that no one was there, he saw in plain view a bottle of quinine, a cutting agent for heroin. Newton, believing that there were narcotics to be found, then instituted a more thorough search. From a box on the windowsill he seized a coffee grinder containing a white powdery residue. From the desk, he recovered a teacup containing a small package of white powder, a welfare card depicting defendant Edwards, an insurance card and a business card belonging to Edwards. He also found in and under the desk a roll of plastic tape, a silver spoon, glassine packets, bags containing vials and plastic bags. Agent Newton informed agent Guglielmi of his discoveries; agent Guglielmi then expanded the scope of his search.

Guglielmi searched all of the cabinets and drawers in defendant Pickron's bedroom, seizing from the dresser drawer two packets containing a white substance, nine packets containing a green weed, a plastic bottle of inositol, and a face filter mask. From inside the dresser, the agent also seized Pennsylvania State Parole Agent James Commons' business card, and a ziplock bag containing empty packets. Agent Guglielmi

returned to the kitchen and recovered a plastic bag containing white powder from the medicine cabinet.

At 7:15 a.m., when defendant Pickron entered the residence, she was arrested and a beeper was confiscated from her person. The agents waited until 9:15 a.m. for defendant Edwards to arrive and, when he did not, they left.

At this time, they transported Pickron to the local police station and then to the Narcotics Division for processing on the present charges. They took the evidence to the Police Administration Building. No technical parole violations were ever instituted based on the contraband seized.

The defendants filed a Motion to Suppress the drugs, the drug paraphernalia and the identification evidence. The trial court suppressed the evidence based upon *Commonwealth v. Brown*, 240 Pa.Super. 190, 361 A.2d 846 (1976). The court held that the parole officers had "switched hats" by ceasing to act as administrators of the parole system, and began acting as police officers gathering evidence to support new criminal charges. The court rejected the Commonwealth's contention that *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), allowed the parole officers to conduct the search.

The Commonwealth appealed to the Superior Court, which reversed the Order of the trial court suppressing the evidence. 400 Pa.Super. 197, 583 A.2d 445 (1990). The Superior Court distinguished *Commonwealth v. Brown* and held that the parole officers had not switched hats; instead

[t]hey found quinine, a cutting agent for heroin, in a closet of the apartment occupied by the defaulting parolee. Therefore, they expanded their search to determine whether there was evidence that the parolee was abusing drugs. It was clearly within their role as supervisors of Pickron's parole to ascertain whether the parolee, who had not been reporting to her supervisor, had been engaged in illegal drug activities. The fact that the parole officers elected to make this additional determination did not cause them to

switch roles from parole supervisors to police officers engaged in investigating crime.

The search of the apartment was made by parole officers without assistance or intervention by police. The record does not show police involvement of any kind in the events which caused the parole officers to arrive at, enter and search the parolee's apartment. The fact that the parole officers, having found controlled substances in the apartment, elected to proceed first by criminal prosecution rather than by immediate parole violation proceedings does not imply that they were acting in a police capacity when they searched the parolee's apartment. By proceeding criminally in the first instance, they may well have envisioned an evidentially easier and more narrowly focused parole violation hearing.

Finally, it cannot be said that the parole officers changed hats and became stalking horses for the police when, having found contraband, they retained evidence which identified other occupants of the apartment who may have had access to the contraband. This fact, without more, did not render illegal the search for contraband after the finding of a bottle of quinine had suggested the likelihood that the parolee was keeping a controlled substance in the apartment.

*Id.* at 206–07, 583 A.2d at 450.

We granted allocatur to examine the fourth amendment rights of a parolee. *Commonwealth v. Edwards,* 527 Pa. 641, 593 A.2d 415 (1991); *Commonwealth v. Pickron,* 527 Pa. 643, 593 A.2d 417 (1991). Subsequently, on September 1, 1992, we ordered the parties to brief the issue of whether the Superior Court improperly disregarded the credibility findings of the Suppression Court.

Appellants argue that the Superior Court improperly disregarded the Suppression Court's factual findings that the parole officers acted like police officers. The Commonwealth argues first that the Superior Court properly reviewed the facts; conversely, the Commonwealth argues that the purpose of the agents is unimportant because the parole officers have

the right to conduct a search for evidence of parole violations, including criminal activities which violate parole.

For the reasons that follow, we reverse the Superior Court and reinstate the Order of the Court of Common Pleas suppressing the drugs, the paraphernalia and the identification evidence.

In cases where we review the findings of fact made by a trial court to suppress evidence, we follow a clearly defined standard of review. Where the Commonwealth appeals the findings of a Suppression Court we consider only the evidence of the defendant's witnesses and the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. We are bound by the lower court's findings of fact if they are supported in the record, but we must examine any legal conclusions drawn from those facts. *Commonwealth v. Lagana,* 517 Pa. 371, 375, 537 A.2d 1351, 1353–54 (1988). *See also Commonwealth v. Robinson,* 518 Pa. 156, 159, 541 A.2d 1387, 1388–89 (1988). In this case, the Suppression Court found that the parole officers had subjectively changed the purpose of their search from searching for evidence of parole violations to searching for evidence of criminal violations.

Based upon the testimony of the parole officers, the Suppression Court found that the parole officers had acted as police officers.[1] Our review of the record supports that finding. Thus, our review is now limited to whether the trial court made an error of law in suppressing the evidence.

Appellants are here before us claiming that the fourth amendment prohibits the type of activity in which the parole officers engaged. The claims are not rooted in our state constitution.[2] Our examination is based solely on the fourth amendment to the United States Constitution.

1. The Superior Court also acknowledged that the parole officers failed to institute parole revocation proceedings.

2. To argue that the state constitution provides greater protection for probationers and parolees than the Federal Constitution, the parties

The fourth amendment protects parolees with some limitations. The Supreme Court of the United States has recognized that parolees do have limited fourth and fifth amendment rights in parole revocation hearings; similarly, the Court has held that they have limited constitutional rights with regard to criminal proceedings.

The closest case on point to this one is *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), in which the United States Supreme Court addressed the fourth amendment rights of a probationer whose house was searched pursuant to a state regulation which authorized probation officers to search his house based upon reasonable suspicion that the residence contained contraband. The State Department of Health and Social Services in Wisconsin promulgated regulations, pursuant to a statute that permitted a probation officer to search a probationer's home without a warrant, with his supervisor's permission and if there were reasonable grounds to believe that contraband was present. Upon information from a police tip, a probation officer searched Griffin's apartment and found a handgun, in violation of probationer's parole. Griffin was convicted of the felony of possessing a handgun while a convicted felon, after he unsuccessfully sought to suppress the gun based on fourth amendment grounds. The Wisconsin Court of Appeals and the Wisconsin Supreme Court affirmed the conviction holding that a probationer has a diminished expectation of privacy and therefore a probation officer could search a probationer's house without a warrant and with reasonable suspicion that contraband was present.

On certiorari, the United States Supreme Court affirmed the judgment below but on different grounds. The Supreme Court refused to decide the issue of whether the probationers had limited fourth amendment rights, but instead held that "[a] state's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond

would have had to provide us with the four-part analysis we established in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991).

normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id.*, 483 U.S. at 873–74, 107 S.Ct. at 3168–69, 97 L.Ed.2d at 717. One such justified departure was the regulation authorizing warrantless searches of probationers' residences based upon reasonable suspicion that the residence contained contraband or evidence of parole violations. Thus, the search "satisfied the demands of the Fourth Amendment because it was carried out pursuant to a *regulation that* itself *satisfies* the Fourth Amendment's reasonableness requirement under well-established principles." *Id.* at 873, 107 S.Ct. at 3168, 97 L.Ed.2d at 717 (emphasis added).

The Commonwealth argues that there were reasonable grounds to support the parole officers' search of Pickron's apartment; thus, the Commonwealth proposes *Griffin v. Wisconsin* to support the assertion that the results of the search are not suppressible under the fourth amendment.

Appellants argue that the *Griffin* "special needs" exception applies only to a specific statutory or regulatory framework; consequently, because Pennsylvania does not have such a regulatory framework, the *Griffin* exception does not apply.

We agree with Appellants. It is a matter of federal law and state law that parole and probation officers cannot act like "stalking horses" for the police. We have a factual determination by the Suppression Court that these agents were subjectively operating as police officers. We do not have a statute or regulation which allows or governs the performance of warrantless searches based upon reasonable suspicion or probable cause. Therefore, we see no basis for overturning the decision of the trial court and, thus, we reverse the decision of the Superior Court.

Since the *Griffin* decision, numerous federal and state courts have confronted the issue of a parolee or probationer's limited fourth amendment rights and whether warrantless searches are allowed, absent some statutory or regulatory framework. Some courts have held that without statutory or regulatory authorization, warrantless searches for contraband

violate the fourth amendment.[3]   Other courts have held that the *Griffin* case allows for warrantless searches based upon the reasonable suspicion that the residence contains contraband or other evidence of parole or probation violations.[4]   Still other courts have upheld the use of agreements between the parolee/probationer and the state in which the parolee/probationer consents in advance to warrantless searches of his residence for contraband or evidence of parole violations.[5]

In the instant cases, we do not have before us a statutory or regulatory framework nor an agreement by the defendants consenting to the search.   Thus, we are confronted with the issue left unaddressed by *Griffin.*   We hold therefore that the

3.   *United States v. Robinson,* 857 F.2d 1006 (5th Cir.1988) (*"Griffin* was specifically limited to upholding the validity of the state regulation at hand, and the Supreme Court relied on state court interpretations of the regulation to conclude that it was reasonable under the Fourth Amendment"); *U.S. v. Pagel,* 854 F.2d 267 (7th Cir.1988), *cert. denied* 488 U.S. 995, 109 S.Ct. 562, 102 L.Ed.2d 587 (limiting *Griffin* to regulations regarding searches of parolees and probationers); *People v. Flagg,* 217 Ill.App.3d 655, 658, 160 Ill.Dec. 490, 492, 577 N.E.2d 815, 817 (1991) ("We hold that the status of a parolee is insufficiently different from the status of an unconvicted citizen to warrant allowing the government to ignore the sanctity of hearth and home, intrude at will, and pry into the secrets therein."); *Toney v. State,* 572 So.2d 1308 (Ala.1990) (warrantless search pursuant to statute held not to violate defendant's constitutional rights).

4.   *See United States v. Hill,* 967 F.2d 902 (3rd Cir.1992) (holding that *Griffin* applies to warrantless searching of *parolee's* residence based on probable cause but no statutory or regulatory framework); *U.S. v. Giannetta,* 909 F.2d 571 (1st Cir.1990) ("we do not read *Griffin* as approving only probation searches conducted pursuant to a legislative or administrative framework"); *United States v. Schoenrock,* 868 F.2d 289, 292–93 (8th Cir.1989) (*"Griffin* stands for the proposition that reasonableness for probationary searches may be established by statute rather than by warrant.   Similar logic allows the reasonableness of searches to be determined by the careful findings of a sentencing court"); *Washington v. Patterson,* 51 Wash.App. 202, 208, 752 P.2d 945, 948 (1988) ("We conclude that under our Washington Constitution there exists an exception to the warrant requirement which allows a search based on reasonable suspicion").

5.   *Cherry v. State,* 302 Ark. 462, 467, 791 S.W.2d 354, 357 (1990) ("We hold that this warrantless search, pursuant to Appellant's implied consent, did not violate the 4th Amendment"); *Pena v. State,* 792 P.2d 1352, 1357 (Wyo.1990) ("Pena, as one of the conditions for his parole, had signed a 'Parole Agreement and Parole Grant' (Agreement) to find that Pena had consented to the search.").

fourth amendment prohibits the warrantless search of probationers or parolee's residences based upon reasonable suspicion without the consent of the owner or without a statutory or regulatory framework governing the search.[6] We do so because we recognize that there are no safeguards to protect the limited fourth amendments rights of probationers and parolees if their supervision is left entirely to the discretion of individual parole officers. In the traditional fourth amendment case, the warrant requirement based upon probable cause and issued by a neutral and detached magistrate guarantees the protection of a citizen's constitutional rights. Similarly, in the context of a probationer or parolee's limited fourth amendment rights, some systemic procedural safeguards must be in place to guarantee those limited fourth amendment rights. In the absence of any statutory or regulatory framework, or an agreement explicitly setting out the rights of the defendant and the authority of the state to supervise the defendant, we are constrained to conclude that the actions of these parole officers violated the fourth amendment. Therefore, the evidence was properly suppressed.

Accordingly, we reverse the Order of the Superior Court, and we reinstate the consolidated Order of the Court of Common Pleas, suppressing the evidence seized in the search of Pickron's residence.

PAPADAKOS, J., files a concurring and dissenting opinion.

PAPADAKOS, Justice, concurring and dissenting.

The majority correctly concludes that a warrantless search of a parolee's residence should only be undertaken by parole officers if a statute or regulation authorizes such conduct. The majority declares that no such statute exists and proceeds to suppress drugs and drug paraphernalia seized from Robin Pickron's home and person. However, the majority overlooks the existence of such a statute which I read as authorizing

---

**6.** This is not to say that an agreement giving consent or a statute authorizing such searches would necessarily survive constitutional scrutiny. We are merely limiting this holding to these facts.

such conduct. Section 27 of the Probation and Parole Act, Act of August 6, 1941, P.L. 861, § 27, 61 P.S. § 331.27 provides:

> Parole officers appointed by the board are hereby declared to be peace officers and are hereby given police power and authority throughout the Commonwealth to arrest without warrant, writ, rule or process any parolee or probationer under the supervision of the board for failing to report as required by the terms of his probation or parole, or for any other violation thereof.

Here, Pennsylvania State Parole Officers went to Pickron's apartment armed with a warrant to arrest her for her failure to report as required by the terms of her probation. As I read the statute, the parole officers were acting as peace officers with full police power to arrest Pickron for this violation (with or without a warrant) and for any other violation of her probation or parole and that, therefore, they had an unquestioned right to be in Pickron's apartment.

I view the additional conduct of the parole officers (warrantless search based upon reasonable suspicion) to be sanctioned by this statute and to empower these officers with the same powers possessed by any police officer who is legally at someone's residence and then in "plain view" sees evidence of a crime. I do not believe that the majority is saying that a police officer's warrantless search under these same facts would be impermissible, only that these parole officers could not act like police without specific authority to do so. Since the statute gives parole officers full police power to arrest probation and parole violators, the necessary statutory authority exists for their actions, and for that reason I respectfully dissent and would affirm the order of the Superior Court as it applies to Robin Pickron.

Consistent with my reading of 61 P.S. § 331.27, I can agree that the parole officers were not vested with police powers over Robert Edwards since it does not appear that he was a probationer or parolee and that, therefore, they were not entitled to seize his welfare card, insurance card or business card.

252

I, therefore, concur with the majority and would reverse the order of the Superior Court as to Robert Edwards.