J-S46027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RYAN WRIGHT | |
| Appellant | No. 2980 EDA 2015 |

Appeal from the PCRA Order August 31, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0005191-2012

BEFORE: BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                                    **FILED JULY 26, 2016**

Ryan Wright appeals, *pro se*, from the order entered August 31, 2015, in the Montgomery County Court of Common Pleas, denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. Wright seeks relief from the judgment of sentence of a term of five to 10 years' imprisonment, imposed following his non-jury conviction of persons not to possess firearms.[1] On appeal, Wright contends trial counsel was ineffective for failing to argue that the parole agent involved in his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).

arrest was acting as a "stalking horse" for the police.[2]  For the reasons that follow, we affirm.

The facts underlying Wright's arrest and conviction were summarized by this Court in the unpublished decision affirming his judgment of sentence on direct appeal:

> During April 2012, State Parole Agent Harry Gaab learned information from two sources that [Wright] would be in Norristown, Montgomery County.  At the time, [Wright] was on state parole and was not permitted outside of Philadelphia County.  According to these sources, [Wright] was carrying a gun, involved in drug deals and robberies, and driving a black Jeep Cherokee.  The sources were individuals whom the agent had used in the past on multiple occasions[, and had provided information that led to arrests.]  On April 30, 2012, Agent Gaab learned from one source that [Wright] would be in Norristown in the vehicle in question in the vicinity of Spruce and Willow Streets.  Agent Gaab confirmed this information within fifteen minutes, observing a black Jeep Cherokee parked on the corner of Spruce and Willow Streets.  The agent recorded the license plate number and ran a check, which revealed no record of that tag.  However, Agent Gaab's source confirmed that the tag number belonged to the vehicle driven by [Wright].
>
> Thereafter, for safety reasons, Agent Gaab and his supervisor contacted Norristown police to aid in arresting [Wright]. Agent Gaab informed Sergeant Langdon of the Norristown police how he had learned of the information regarding [Wright].  Sergeant Langdon passed this information along to Officer Louis Geiser of the Norristown Police Department.  Officer Geiser also discovered from his own check that [Wright] had four active fine and costs arrest warrants from a magisterial district court.

_____

[2] Wright's Brief at 4.

- 2 -

Subsequently, on May 2, 2012, Agent Gaab learned from a source that [Wright] would be in Norristown in the black Jeep Cherokee. Within a half-hour of receiving this information, Officer Geiser, at approximately 10:00 p.m., located a black Jeep Cherokee matching the description previously given. He confirmed that the license plate number of the vehicle matched that of the suspect vehicle. Accordingly, he activated his lights and approached the vehicle with his weapon drawn. Officer Geiser directed [Wright] to place his hands outside the window of the vehicle. [Wright] complied.

Agent Gaab and his supervisor then arrived on the scene along with an additional Norristown police officer. After being removed from the vehicle and placed on the ground, [Wright] indicated that he had a gun in his back pocket. Law enforcement seized the weapon and arrested [Wright].

*Commonwealth v. Wright*, 104 A.3d 56 [1067 EDA 2013] (Pa. Super. 2014) (unpublished memorandum at 1-3).

As noted above, Wright was charged with one count of persons not to possess firearms.[3] Prior to trial, Wright sought to suppress the firearm, asserting that the stop of his vehicle, and subsequent seizure and search of his person, were illegal.[4] Following a hearing on March 28, 2013, the trial court denied Wright's motion to suppress. Wright proceeded to a stipulated non-jury trial on April 3, 2013, was found guilty by the trial court, and was

_____

[3] We note that Wright was also charged with one count of firearms not to be carried without a license, but that charge was later *nolle prossed* by the Commonwealth. **See** 18 Pa.C.S. § 6106(a)(1).

[4] In the memorandum disposing of Wright's direct appeal, the panel noted that although no written suppression motion was included in the record, or reflected on the docket, the Commonwealth did not object to the lack of a written suppression motion. **See Wright**, **supra**, 1067 EDA 2013, unpublished memorandum at 3 n.3.

sentenced the same day to a standard range term of five to 10 years' imprisonment. This Court affirmed the judgment of sentence on direct appeal. ***See id.***

On June 3, 2015, Wright filed a timely, *pro se* PCRA petition, and counsel was appointed. However, on August 4, 2015, counsel filed a petition to withdraw and accompanying ***Turner***/***Finley***[5] "no merit" letter. The same day, the PCRA court granted counsel's petition to withdraw, and issued notice of its intent to dismiss Wright's petition without first conducting an evidentiary hearing pursuant to Pa.R.A.P. 907. Wright did not file a response to the court's notice, and accordingly, on August 31, 2015, the PCRA court entered an order dismissing the petition. This timely appeal followed.[6]

---

[5] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[6] Although the notice of appeal was time-stamped October 5, 2015, Wright mailed the notice on September 28, 2015, as evidenced by a copy of the prison "cash slip" included with the petition, which indicates the date he had postage deducted from his prisoner account. "Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing." ***Commonwealth v. Brandon***, 51 A.3d 231, 234 n.5 (Pa. Super. 2012) (citation omitted). Therefore, Wright's appeal was timely filed.

Thereafter, on October 6, 2015, the PCRA court ordered Wright to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Wright complied with the court's directive, and filed a concise statement that was docketed on November 2, 2015. Although the court directed Wright to file the petition within 21 days of the its order, Wright averred in his concise statement that he handed the document to prison
*(Footnote Continued Next Page)*

- 4 -

Wright's sole claim on appeal asserts the ineffectiveness of trial counsel for failing to argue during the suppression hearing that Parole Agent Gaab circumvented the warrant requirement by acting as a "stalking horse" for the police. Wright's Brief at 4.

When reviewing an order dismissing a PCRA petition, we must determine whether the PCRA court's findings of fact are supported by the record, and whether its legal conclusions are free from error. *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." *Commonwealth v. Carter*, 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted).

"[T]o prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Spotz*, *supra*, 84 A.3d at 311. Moreover, "[c]ounsel is presumed to have rendered effective assistance, and, if a claim fails under any required element …, the court may dismiss the claim on that basis." *Commonwealth v. Reid*, 99 A.3d 470, 481 (Pa. 2014) (quotation omitted).

*(Footnote Continued)* ───────────

officials for mailing on October 26, 2015. The trial court accepted the filing, and, therefore, we will deem it timely filed pursuant to the prisoner mailbox rule. *See Brandon*, *supra*.

During the suppression hearing, counsel argued the stop of Wright's vehicle and the seizure of his person were unlawful. Specifically, he claimed Agent Gaab did not have reasonable suspicion to believe Wright committed a parole violation. *See* N.T., 3/28/2013, at 61. However, Wright asserts counsel should have argued Agent Gaab "switched hats" and "began acting as a police officer" when he conducted an investigation and gathered evidence to support new criminal charges. Wright's Brief at 13. He explains:

> When a parole agent, in his normal duties, involves the police in the search and arrest of a parolee, the parole agent "switched hats" and became a "stalking horse", thereby, circumventing the warrant requirement which in reality is the normal function of the police.

*Id.*

Wright contends Agent Gaab began gathering evidence against him based on hearsay statements from two informants, who claimed Wright was engaged in illegal activity. *See id.* at 14. He then conducted "surveillance" which resulted in his observation of Wright's vehicle parked legally near the home of Wright's children. *Id.* at 15. Agent Gaab never contacted Wright's supervising parole agent, but rather, "with the police in tow, relied fully on the police power to arrest Wright." *Id.* Therefore, Wright argues Agent Gaab was not acting within his authority as a parole agent at the time he stopped and searched Wright, but rather, he had "switched hats" to become a "stalking horse" for the police. Wright further contends this claim has arguable merit, counsel had no reasonable basis for failing to present a

"stalking horse" defense, and he was prejudiced as a result of counsel's inaction. *See id.* at 16-17.

In *Commonwealth v. Pickron*, 634 A.2d 1093 (Pa. 1993), the Pennsylvania Supreme Court recognized parolees retain the right, under the Fourth Amendment, to be free from **unreasonable** searches and seizures. *Id.* at 1096. In that case, the Court considered whether parole officers had exceeded their authority in conducting a full search of a parolee's home. The suppression court concluded the agents "had 'switched hats' by ceasing to act as administrators of the parole system, and began acting as police officers gathering evidence to support new criminal charges." *Id.* at 1095. However, the Superior Court reversed the decision on appeal. *Id.*

> In reinstating the order of the trial court, the Supreme Court opined:
>
> It is a matter of federal law and state law that parole and probation officers cannot act like "stalking horses" for the police. We have a factual determination by the Suppression Court that these agents were subjectively operating as police officers. **We do not have a statute or regulation which allows or governs the performance of warrantless searches based upon reasonable suspicion or probable cause.**

*Id.* at 1097 (emphasis supplied).

Subsequently, in January of 1996, the legislature added Section 331.27 to the 1941 Parole Act which permitted a parole agent "to search a parolee's person and property if there [was] a reasonable suspicion to believe that the person or property [had] evidence of parole violations." *See Commonwealth v. Mathis*, 125 A.3d 780, 785 (Pa. Super. 2015), *appeal granted*, 134 A.3d 51 (Pa. 2016). That statute was later repealed

and recodified as the Prison and Parole Code, 61 Pa.C.S. § 6101 *et seq*. Pursuant to 61 Pa.C.S. § 6153, a parole agent may conduct a personal or property search of a parolee if there is a reasonable suspicion to believe that "the offender possesses contraband or other evidence of violations of the conditions of supervision" or "the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6153(d)(1)(i) and (d)(2).[7] *See Commonwealth v. Curry*, 900 A.2d 390, 394 (Pa. Super. 2006) ("Essentially, parolees agree to 'endure warrantless searches' based only on reasonable suspicion in exchange for their early release from prison.") (citation omitted). Accordingly, this Court has explained the determination of whether a parole agent acted as a "stalking horse" for the police when conducting a search of a parolee, is "pertinent" to the extent that a parole agent may, statutorily, circumvent the warrant requirement based upon a finding of reasonable suspicion under Section 6153(d)(1). *Commonwealth v. Altadonna*, 817 A.2d 1145, 1153 (Pa. Super. 2003).

In the present case, the PCRA court found Agent Gaab was not acting as a "stalking horse" for the police. The court opined:

---

[7] We note that, absent exigent circumstances, an agent must obtain prior approval from a supervisor to conduct a search of a parolee's property. 61 P.S. § 6153(d)(3). However, no prior approval is required for a personal search. *Id.*

In this case, the May 2, 2012, search and seizure of [Wright] was based solely upon Agent Gaab's investigation which uncovered information from two reliable informants, that [Wright] would be in Norristown carrying a gun and doing drug deals, all of which were parole violations. Agent Gaab first went to his supervisor, State Parole Agent Dettiburn, to report what he had learned through his investigation. Agent Gaab then coordinated with Norristown police only for safety purposes since [Wright] was reportedly selling drugs and carrying a firearm. There was nothing in the unfolding of these events to suggest that Agent Gaab was working with the Norristown police in search of criminal activity; rather, Agent Gaab in his role as a parole agent, determined that there was evidence that [Wright] was violating his parole as a result of his own investigation, which never involved the Norristown police. It was only after Agent Gaab developed the facts in his investigation that he went to the Norristown police for safety reasons. Accordingly, Agent Gaab was not a stalking horse for the Norristown police. Furthermore, trial counsel was not ineffective in failing to present this argument to the suppression court when the underlying claim lacks merit.

PCRA Court Opinion, 11/16/2015, at 7-8.

Our review of the transcript from the suppression hearing confirms the PCRA court's findings are supported by the record. Agent Gaab testified he acquired information from two previously reliable contacts that Wright was frequently in Norristown without written permission and was carrying a firearm, both of which were violations of the conditions of his parole.[8] **See**

---

[8] To the extent Wright contends Agent Gaab neglected to contact his supervising agent, whom, Wright claims, gave him permission to travel to Norristown to see his children, we note Agent Gaab testified he "reviewed all the notes," as well as Wright's "travel pass query," and found no request for Wright to travel to Norristown. N.T., 3/28/2013, at 49-50, 55. Moreover, Wright admitted "normally you have to get a written permission slip" to travel outside of the approved jurisdiction. **Id.** at 56.

N.T., 3/28/2013, at 19-20, 21. Moreover, he also received information from those contacts that Wright was selling marijuana and conducting gunpoint robberies. *See id.* at 21. Agent Gaab then conducted surveillance and confirmed the vehicle Wright was driving was in Norristown without written approval. *See id.* at 25-26. Thereafter, the agent briefed his supervisor on the situation, who instructed him to coordinate the parole arrest with the Norristown Police Department due to the fact Wright was purportedly carrying a gun. *See id.* at 28. Therefore, although the police were ultimately involved in the apprehension of Wright, Agent Gaab's investigation and his subsequent search of Wright, focused on Wright's parole violations. *See Altadonna*, *supra*, 817 A.2d at 1153 (holding parole officers were not acting as agents of police; "[a]lthough [the defendant] cites correctly the ways in which the BNI agents assisted the parole officers in effectuating the seizure of [him] and the search of the van, the witnesses testified consistently that the stop and search took place in order to determine whether [the defendant] had committed a technical violation of his parole."). Accordingly, we conclude Wright's claim had no arguable merit, and the PCRA court did not err in finding trial counsel was not ineffective for failing to raise this meritless claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/26/2016</u>