J-A24003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JASON R. MILLER | |
| Appellant | No. 3750 EDA 2015 |

Appeal from the Judgment of Sentence November 16, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0001170-2014

BEFORE:  BOWES, OTT AND SOLANO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 18, 2017**

Jason R. Miller appeals from the aggregate judgment of sentence of fifteen to forty years incarceration imposed following a stipulated non-jury trial resulting in convictions on two counts of rape of a child.  The sole issue on appeal pertains to the trial court's denial of the motion seeking to suppress a statement given on January 21, 2014.  We affirm.

The stipulated facts were introduced through incorporation of testimony from the suppression hearing, the affidavit of probable cause, and an audio recording, with corresponding transcription, of Appellant's statement.  The victim, A.S., is the daughter of Appellant's ex-paramour Phyllis.  Sometime in May of 2010, when A.S. was eleven years old, Appellant, while visiting Phyllis, pushed A.S. onto her bed and vaginally raped her.  Appellant was thirty-four years old.

In October of 2010, Phyllis and A.S. moved to Corona, California, where Appellant primarily resided. During her stay, A.S. was forced to participate in numerous sexual encounters. She and Phyllis moved back to Pennsylvania in June of 2011. Appellant visited in July of 2011 and again sexually assaulted A.S. He maintained communication with A.S. through 2013 via email and text messages.

In July of 2013, A.S. confided to her boyfriend about these events, who in turn assisted A.S. with notifying officials at her school and the Lower Merion Township Police. As a result, warrants for Appellant's email accounts were prepared and executed, with the fruits corroborating a sexual relationship.

On January 21, 2014, Corona Police Department served an arrest warrant at Lower Merion's request. Appellant was taken to the police station, where he gave the following account. Appellant met Phyllis on a dating website during a time period when he and his wife were experiencing marital difficulties. The relationship ended when Phyllis insisted that he leave his wife. Phyllis and A.S. moved in with him and his wife in California because Phyllis needed to get away from her ex-husband. Appellant told his wife about the affair, but convinced her that Phyllis needed their help. He denied any sexual contact with A.S., and denied any continuing contact with A.S. after she returned to Pennsylvania with her mother.

When confronted with evidence of the communications occurring after A.S. returned to Pennsylvania, including emails to A.S., Appellant stated someone must have hacked his account. He attributed the allegations to the fact that Appellant would not leave his wife.

The detectives then informed Appellant they possessed an audio recording, made by A.S., of a phone conversation between the two in February of 2013. At this point, Appellant admitted to having sex with A.S. on multiple occasions. He claimed A.S. threatened to tell her mother that Appellant raped her if he did not have sex with A.S.

For these crimes, Appellant was charged at criminal case number 2014-1170 with forty separate crimes, thirty-eight of which the Commonwealth *nolle prossed* prior to the stipulated trial. On May 30, 2014, Appellant filed a motion to suppress, which was denied following an evidentiary hearing on April 24, 2015. The denial of that motion is the sole issue presented on appeal:

> Whether the trial court erred in denying [A]ppellant's Motion to suppress his statement because it was not voluntary due to the fact that [A]ppellant was suffering from significant physical pain at the time of the interrogation, and his ability to give a voluntary statement was overborne by his medical condition?

Appellant's brief at 4.

Where the denial of a defendant's suppression motion is at issue, we are subject to the following standard of review:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to

- 3 -

determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.

*Commonwealth v. Witmayer*, 144 A.3d 939, 948 (Pa.Super. 2016) (citation omitted).

In the present case, the suppression court took testimony regarding Appellant's physical condition during the arrest and subsequent statement. That hearing revealed the following. Between 7:00 and 8:00 a.m., Corona Police officers proceeded to Appellant's residence. N.T. Suppression, 4/24/15, at 10. Dispatchers spoke to Appellant on the phone and told him to go outside, where he was handcuffed and told to sit on the ground. *Id*. at 14. Appellant requested alternative arrangements due to back pain, and Sergeant Daniel Dunnigan of the Corona Police accommodated this request by allowing Appellant to sit on the bed of a truck. *Id*. at 15. Other officers drove Appellant to the police station while Sergeant Dunnigan conducted further investigation at the residence. *Id*. at 17.

At 10:33 a.m., Sergeant Dunnigan interrogated Appellant at the police station. Appellant was read *Miranda*[1] warnings and signed an accompanying form reflecting he understood those rights. While Appellant

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 4 -

complained of pain several times during the interview, Sergeant Dunnigan opined that Appellant did not appear to have any difficulties understanding the proceedings. *Id*. at 8. The sergeant further testified that Appellant never expressed any desire to stop speaking for any reason. *Id*. at 7. The interview lasted a little over an hour. *Id*. at 25.

Appellant testified that he has bulging disks in his back, which cause numbness and severe pain in his lower back and legs. *Id*. at 28. He took narcotics to manage the pain and normally wore a back brace. *Id*. at 29, 37. He averred that he was in extreme pain during the interview and felt he had no choice but to give a statement. *Id*. at 42. He stated that he told multiple officers prior to his interrogation that he was in extreme pain, wanted to speak to a lawyer, and needed medication. *Id*. at 41. He answered the questions without specifically mentioning those matters on the tape because he felt it was clear that the police were not willing to allow him any medical attention. *Id*. at 54.

Following argument, the suppression court issued findings of fact crediting the testimony of Sergeant Dunnigan. The suppression court emphasized that Appellant was read his *Miranda* warnings, signed a corresponding form, stated "I have nothing to hide" before answering questions, and did not appear to have any problems understanding what was being asked. The court discredited Appellant's testimony that he asked questioning to cease, whether due to pain or to speak to a lawyer, finding

there was nothing in the transcript of the audio statement to support that allegation. *Id*. at 68-73.

There is no dispute that Appellant was in pain. However, the question is whether, under the totality of the circumstances, the confession was a free choice. Pain is but one factor in assessing voluntariness. "There is of course no single litmus-paper test for determining a constitutionally impermissible interrogation. . . . [T]he ultimate test of voluntariness is whether the confession is the product of an essentially free and unconstrained choice . . . we must consider the totality of the circumstances, including the accused's mental and physical condition." *Commonwealth v. Johnson*, 107 A.3d 52, 93 (Pa. 2014) (quotation marks and citations omitted). We are guided by the following non-exclusive list of factors in assessing totality of the circumstances:

> the duration and means of interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion.

*Commonwealth v. Bryant*, 67 A.3d 716, 724 (Pa. 2013) (citing *Commonwealth v. Perez*, 845 A.2d 779 (Pa. 2004)). Whether the

confession is voluntary is a question of law subject to *de novo* review. ***Commonwealth v. Nester***, 709 A.2d 879, 881 (Pa. 1998). However, the underlying factual and credibility determinations pertaining to the circumstances are owed deference and must merely be supported by record. ***Nester***, ***supra***; ***see Miller v. Fenton***, 474 U.S. 104, 117 (1985) ("Of course, subsidiary questions, such as the length and circumstances of the interrogation . . . often require the resolution of conflicting testimony of police and defendant.").

Appellant avers that his physical pain rose to the level that his will was overcome. He primarily relies upon ***Commonwealth v. Perry***, 379 A.2d 545 (Pa. 1977), and ***Commonwealth ex rel. Gaito v. Maroney***, 220 A.2d 628 (Pa. 1966) as authorities supporting reversal. We find both cases readily distinguishable.

In ***Perry***, the defendant suffered a self-inflicted gunshot wound to the chest as he fled from the police. ***Id***. at 546. He was taken to the hospital, given a pain drug, and guarded by a police officer stationed near the room. Approximately thirteen hours later, he was interviewed and gave a statement. The ***Perry*** Court set forth the circumstances surrounding the interrogation as follows.

> During the interview appellant was lying in bed and was alone in the room with the interrogating detective. During the interview he complained to the detective of pain and was experiencing discomfort from a catheter inserted through the penis into the bladder in order to monitor for any abnormal bleeding indicating injury to the bladder, urinary tract or kidney. At one point during

the interview, when the appellant complained of pain, he asked the detective to call the nurse. When the nurse arrived, the appellant informed her that he was in pain and wanted some type of medication. Medication, however, was refused. Throughout the interview, appellant was being fed through an intravenous tube. The catheter remained in the appellant for over two days and the intravenous feeding continued constantly for about four days. At one point during the interrogation, appellant was asked by the detective if he wanted to continue the interrogation and the appellant answered that he "didn't care."

*Id*. *at* 547. Applying the totality of the circumstances test, the Court concluded that because the appellant was being fed intravenously, had a catheter causing much discomfort, was under police guard and denied medication for pain, and had not seen any familiar face for more than twelve hours, the confession was not a free and unconstrained choice.

In **Maroney**, the appellant was found at approximately 3:00 a.m. by the entrance of a hospital with a bullet wound in his abdomen. He was immediately rushed into surgery, during which he received transfusions of blood equaling approximately 40% of his entire blood supply, and was administered multiple medications. **Id**. at 630. Approximately four hours after surgery, an assistant district attorney investigating the crimes in question spoke to the appellant for approximately thirty minutes and elicited incriminating statements. **Id**. In a note made in a hospital record one hour after the confession was obtained, the appellant was described as "very incoherent." **Id**. Additionally, the Commonwealth's own expert, who testified that the effects of the drugs administered during surgery would

have been dissipated by the time of the confession, admitted on cross-examination that "the totality of the circumstances cast doubt on appellant's ability to understand, to reflect upon, and to form intelligent answers to the questions propounded during the interview." *Id*. Thus, "When the pertinent circumstances are considered . . . the probability that appellant's confession was the product of a rational intellect and a free will appears remote." *Id*. at 632.

The present circumstances are markedly different from *Perry* and *Maroney*. First, neither case involved chronic pain. Appellant herein has suffered from back pain for approximately three to four years. N.T. Suppression, 4/24/15, at 29. When discussing his back issues with the detectives, Appellant noted, "It's just, I got to live with this type of pain." Transcript of Statement, 1/21/14, at 10. Appellant's back pain was thus a facet of life that he coped with on a daily basis, and not comparable to the traumatic gunshot wounds in *Perry* and *Maroney*. Additionally, *Perry* attached significance to the fact the statement occurred in a hospital, stating, "The legislature has recognized in another context that statements made by injured persons in a hospital setting raise very serious questions as to whether such statements should be recognized as valid by the law." *Id*. at 547. This statement, given at a police station, is clearly not of like kind.

Moreover, there is no indication, as in *Maroney*, that Appellant was incoherent in any way. We have reviewed the audiotaped statement

transcript and it is clear that Appellant had no trouble answering questions. He spoke about numerous aspects of his life, including his prior employment, his difficulties obtaining insurance coverage for additional back surgeries, his relationship with Phyllis and his wife, and the crimes. He answered all questions without difficulty, and exhibited no signs of a compromised mental condition or clouded judgment. He initialed and completed a ***Miranda*** form. These facts are countervailing considerations in the totality of the circumstances. ***See Commonwealth v. Poplawski***, 130 A.3d 697, 712–13 (Pa. 2015) (noting that defendant completed a ***Miranda*** form without difficulty, spoke coherently while in hospital, and was responsive during hospital room arraignment, thus "demonstrat[ing] both his capacity to know what he was saying and his freely exercised will to say it").

Finally, as the suppression court noted, Appellant originally denied any inappropriate contact and specifically denied communications with A.S. occurring after her return to Pennsylvania. Later, when confronted with evidence he had sent emails to her, Appellant changed his story and admitted to having sex with the victim, but blamed her for his actions. As the trial court stated, this "calculated attempt" to deceive police "shows that he was of clear mind." Trial Court Opinion, 1/21/16, at 7.

We agree. Our Courts have found that such deceptive and misleading statements are relevant to the totality of the circumstances inquiry. In ***Commonwealth v. (Roderick) Johnson***, 727 A.2d 1089 (Pa. 1999), our

Supreme Court discussed this concept. Johnson, while in an ambulance *en route* to a hospital for emergency surgery to treat a gunshot wound to the stomach, was asked by police, who had no reason to suspect Johnson was involved in any crime, who shot him. Johnson gave a false story and later sought to suppress the statement as a noncustodial interrogation that resulted in an involuntary confession, claiming his physical condition was so impaired as to render him incapable of giving any kind of statement. The Court discounted the effect of the pain and traumatic injury on his capacity to give a voluntary statement, stating that

> the result of this initial questioning was not a "confession" by [Johnson] of participation in the murders, but rather a false story designed to mislead police concerning the circumstances of [Johnson]'s shooting. While [Johnson] contends that he was incapable of voluntarily giving statements to the police due to his "delirium," his presence of mind in fabricating a story about his shooting seriously undermines that claim. Considering the totality of the circumstances, we do not find that this noncustodial interrogation resulted in an involuntary confession. . . .

*Id*. at 1099. *See Commonwealth v. (Christopher) Johnson*, 107 A.3d 52, 94 (Pa. 2014) (citing (*Roderick*) *Johnson* for proposition that having the presence of mind to lie warrants inference of capacity to respond voluntarily to an interrogator).

Accordingly, we discern neither an abuse of discretion in finding the facts nor an erroneous application of law to those facts in deeming Appellant's confession the product of a free and unconstrained choice.

Judgment of sentence affirmed.

- 11 -

J-A24003-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/18/2017