J-S01015-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANELLE RAE GEIER | : | |
| | : | |
| Appellant | : | No. 515 MDA 2023 |

Appeal from the PCRA Order Entered March 9, 2023
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001369-2016

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED: MAY 6, 2024**

Danelle Rae Geier appeals from the order entered in the Centre County Court of Common Pleas on March 9, 2023, dismissing her petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546, without a hearing. Geier argues the PCRA court erred by dismissing her petition without first holding a hearing on her claims of ineffective assistance of trial counsel. After review, we find none of Geier's claims offer her a basis for relief, and we therefore affirm.

On September 22, 2016, Geier and co-defendant George Gene Ishler, Jr., were charged with first-degree murder and related offenses in connection with the death of Pennsylvania State University Professor Ronald V. Bettig,

---

[*] Retired Senior Judge assigned to the Superior Court.

whose body was discovered on the floor of a quarry pit in Centre County, Pennsylvania in August 2016. Both Geier and Ishler gave statements to the Pennsylvania State Police wherein they confessed to entering into a conspiracy to murder Bettig and make it look like it had been an accident or a suicide.

The Commonwealth gave notice of its intent to consolidate Geier's case with Ishler's case prior to trial. Geier filed an *omnibus* pretrial motion to sever her case from that of Ishler. The trial court denied Geier's motion.

While imprisoned prior to trial, Geier requested to see a counselor through the Penn State Psychological Clinic, who had a contract with the prison to offer services. Geier began seeing Dr. Jonathan Stube, PhD for sessions. At some point, Dr. Stube authored a diagnostic report regarding his counseling of Geier. A few days prior to trial, the Commonwealth received a letter from Dr. Michael C. Wolff, PhD, the director of Penn State's Psychological Clinic, which included the undated report of Dr. Stube as an attachment. The Commonwealth filed a motion to preclude an expert report and opinion testimony. At a hearing on the motion, trial counsel testified that she only planned to present the doctors as fact witnesses. Just prior to trial, the trial court granted the Commonwealth's motion to preclude the report and opinion testimony as improperly submitted expert testimony pursuant to Pa.R.Crim.P. 573(c)(2). **See** N.T., Jury Trial Day 1, 4/16/18, at 4.

On April 23, 2018, following a joint, six-day jury trial, a jury found Geier guilty of all charges. That same day, the trial court sentenced Geier to life

imprisonment without the possibility of parole. Geier filed a timely post-sentence motion, and a supplemental post-sentence motion. Following hearings, the trial court denied Geier's post-sentence motions. We affirmed the judgment of sentence on direct appeal. ***See Commonwealth v. Geier***, 1438 MDA 2018 (Pa. Super. filed January 6, 2020) (unpublished memorandum). The Pennsylvania Supreme Court subsequently denied allowance of appeal.

Geier filed a timely *pro se* PCRA petition. PCRA counsel was appointed and filed an amended petition on August 15, 2022. The Commonwealth filed an answer and a motion to dismiss in response. Following a conference, the PCRA court issued an opinion and order on January 12, 2023 dismissing the PCRA petition without a hearing.

Geier filed a motion to vacate the opinion and order based on the court's failure to file a notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. The PCRA court vacated its January 12, 2023 order and issued a Rule 907 notice. After receiving Geier's response, the PCRA court issued a new opinion and order on March 9, 2023 dismissing the PCRA petition without a hearing. This timely appeal followed.

On appeal, Geier argues the PCRA court erred in denying her PCRA petition without an evidentiary hearing. Specifically, Geier argues she raised meritorious claims of ineffective assistance of trial counsel for failing to (1) file a motion to suppress Geier's statements, (2) ensure the testimony of Drs.

Wolff and Stube was provided at trial, and (3) object to comments of the prosecutor in opening and closing statements as well as other hearsay statements. *See* Appellant's Brief, at 5.

Our "standard of review for an order denying post-conviction relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Walters*, 135 A.3d 589, 591 (Pa. Super. 2016) (citation omitted).

Generally, "[t]he PCRA court may dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post conviction collateral relief, and no legitimate purpose would be served by any further proceedings." *Commonwealth v. Johnson,* 139 A.3d 1257, 1273 (Pa. 2016) (citation and internal quotation mark omitted). When the PCRA court denies a petition without an evidentiary hearing, we "examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing." *Commonwealth v. Khalifah*, 852 A.2d 1238, 1240 (Pa. Super. 2004) (citation omitted).

Geier's claims challenge the effectiveness of counsel. We presume counsel is effective, and a PCRA petitioner bears the burden to prove otherwise. **See Commonwealth v. Bennett**, 57 A.3d 1185, 1195 (Pa. 2012). The test for ineffective assistance of counsel is the same under both the Federal and Pennsylvania Constitutions. **See Strickland v. Washington**, 466 U.S. 668, 687-88 (1984); **Commonwealth v. Kimball**, 724 A.2d 326, 330-332 (Pa. 1999). A petitioner must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. **See Commonwealth v. Solano**, 129 A.3d 1156, 1162-63 (Pa. 2015). A failure to satisfy any prong of the test for ineffectiveness requires rejection of the claim. **See id**. at 1163.

In her first issue, Geier argues trial counsel was ineffective for failing to file a motion to suppress the August 20, 2016 confession given by Geier to police. Geier asserts she was the subject of an illegal custodial interrogation.

> Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way. The **Miranda** safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. Thus, [i]nterrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. In evaluating whether **Miranda** warnings were necessary, a court must consider the totality of the circumstances....

> Whether a person is in custody for **Miranda** purposes depends on whether the person is physically denied of [his] freedom of action in any significant way or is placed in a situation in which [he] reasonably believes that [his] freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes [his] freedom of action is being restricted.
>
> Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

Thus, the ultimate inquiry for determining whether an individual is in custody for **Miranda** purposes is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

**Commonwealth v. Gonzalez**, 979 A.2d 879, 887-88 (Pa. Super. 2009) (citations and internal quotation marks omitted).

Geier argues her belief that she was not free to leave is evidenced by the fact that she entered into a custody agreement with her sister the day prior to the interview. **See** Appellant's Brief, at 28. Geier states she entered into this agreement for her sister to provide care for her child because she believed she was going to be placed in jail as a result of her prior statements of being involved and staging the quarry incident. **See id**.

Nowhere in her argument does Geier base her belief on the actions of the police or the environment surrounding the interview itself. It is not clear why Geier believed that she would be placed in jail. From our review of the

record, there is simply no correlation between that belief and either the actions of the police officers or anything to do with the interview itself.

It is uncontested that Geier voluntarily appeared for the interview on August 20, 2016 and voluntarily responded to the questions asked of her. Geier was not restrained in any manner and was told she was not under arrest; she was able to leave at any time. Although the door was closed, the officers specifically told Geier this was just for privacy. There is no evidence that the officers made any threats to Geier or otherwise made any impermissible inducements in exchange for a confession. Geier was not handcuffed or arrested, or placed into any type of custody, at any point.

Further, we are bound by the trial court's credibility determinations. It is evident the trial court credited the officers' testimony that they made it clear Geier was not under arrest and was free to leave. Therefore, Geir has failed to establish that she was in custody at the time she gave her statement to the police. *See Gonzalez*, 979 A.2d at 887-88.

Geier alternatively argues that even if she were not in custody, it is still possible to find her confession was involuntary. Specifically, Geier argues that when assessing the voluntariness of a confession pursuant to a totality of the circumstances test, the court should look, in part, at the physical or psychological state of the accused. *See Commonwealth v. Nester*, 709 A.2d 879 (Pa. 1998). Geier points to the conclusion of Dr. Stube in his report that

Geier is interpersonally submissive and that she is at a higher risk of being manipulated.

However, Geier herself concedes that an individual's mental condition as it relates to her susceptibility to coercion is but one factor for the court to analyze under the totality of the circumstances test regarding the voluntariness of a confession. **See id.**; **see also** Amended PCRA Petition, 8/15/22, at 8. Notably, Geier has not asserted that she could meet any other factors in a totality of the circumstances test.

As we find Geier was not in custody, and that she has not shown that her confession was involuntary, we cannot find trial counsel erred by failing to file a motion to suppress the confession. There were simply no grounds upon which to base a suppression motion. It is well settled that "counsel cannot be deemed ineffective for failing to raise a meritless claim." **Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015) (citation omitted).

In a related, but separate issue, Geier argues trial counsel was ineffective for failing to take the necessary steps to ensure the testimony of Drs. Wolff and Stube was provided at trial. Specifically, Geier contends the testimony of Dr. Wolff and/or Stube was highly relevant to the voluntary nature of the confession made on August 20, 2016.[1] Further, Geier argues

---

[1] In the amended PCRA petition, Geier briefly mentions that this issue is also related to the defense of duress. However, Geier never expands on this argument.

trial counsel was ineffective for failing to timely provide a copy of the expert report pursuant to Pa.R.Crim.P. 573(c)(2) to allow for the presentation of expert testimony.

During a motions hearing, trial counsel indicated that the purpose of the proposed testimony was not to use the information to dispute Geier's commission of the actual criminal offense. **See** N.T., Motions Hearing, 4/13/2018, at 8. Rather, counsel believed the personality traits identified by the doctors were "relevant to show why, after the fact, she did not report to the police that . . . Ishler killed . . . Bettig." **Id**. at 9. Trial counsel indicated her objection to the court's granting of the Commonwealth's motion to preclude the defense expert report and opinion testimony. **See** N.T., Jury Trial Day 1, 4/16/18, at 4.

In a post-sentence motion, and again on direct appeal, Geier challenged the court's preclusion of the doctors' testimony. On direct appeal, Geier argued the trial court abused its discretion and denied her due process rights when it summarily denied her request to present the testimony of Dr. Stube and Dr. Wolff. A panel of this court concluded this issue was without merit. Specifically, this Court found the trial court properly exercised its discretion in precluding the introduction of the proposed testimony of Dr. Wolfe and Dr. Stube immediately prior to the start of trial, pursuant to Pa.R.Crim.P. 573(E). **See Commonwealth v. Geier**, 1438 MDA 2018, at *2 (Pa. Super. filed January 6, 2020) (unpublished memorandum) ("As recognized by the trial

court, the defense sought to introduce these witnesses as fact witnesses to testify regarding [Geier]'s mental state, when clearly their testimony constituted untimely expert testimony.").

Notably, Geier does not dispute that she helped Ishler carry out the plan that led to Bettig's death. Rather, the defense's theory of the case was that Geier was manipulated by Ishler. Accordingly, Geier does not develop any argument that the doctors' suggested testimony would exonerate her of the crimes charged. Rather, Geier simply argues the testimony would support her contention that her confession to the police was not voluntary. As stated in the prior issue, this testimony is simply not sufficient to prove Geier's confession was involuntary.

In any event, we agree with the trial court that Dr. Stube's report only provided a snapshot of Geier's psychological condition while she was in a prison setting. The doctors were not retained by the defense for litigation purposes, and Dr. Stube's report was not ordered for testimonial purposes. Rather, Geier made a request to see a counselor from the prison's psychological clinic for therapeutic purposes to help Geier deal with the stress of incarceration. The report simply did not relate to Geier's mental state at the time of the crime, or any time outside of being imprisoned.

Accordingly, we cannot find Geier suffered any prejudice due to the absence of this testimony. As such, we find the PCRA court properly found this claim lacks merit.

Finally, Geier asserts trial counsel was ineffective for failing to object to various hearsay statements and purportedly inappropriate comments made by the prosecutor during closing argument. In her amended PCRA petition, Geier listed every comment she took issue with, adding a section for allegedly improper comments made during the Commonwealth's opening argument as well. *See* Amended PCRA Petition, 8/15/22, at 15-20. Other than listing an extensive number of allegedly improper comments, Geier only included approximately one sentence of argument for each comment regarding why she believed the comment was improper. After careful review, we do not believe Geier fully developed a proper argument for any individual comment.

Even in her appellate brief, Geier purports to take issue with numerous statements from opening and closing arguments, as well as hearsay statements. However, she only highlights three instances from the Commonwealth's closing argument.

First, Geier takes issue with the following comment from the Commonwealth during closing argument:

> Is Danelle Geier manipulative? Does she know how to manipulate men to get things she wants? Just take a look around. Why are there eleven men and one woman in this jury panel?
>
> I'll tell you this truth; we men ain't very smart. We just ain't. There are some things women know about us that we just don't get, and I'll talk about the elephant in the room.

N.T., Jury Trial Day 6, 4/23/18, at 117-18.

The prosecutor then relayed a personal story of him and his wife taking in a "young college woman with a past no different than" Geier's, referencing Geier's testimony that she has a history of experiencing sexual assaults, including by Ishler. *Id*. at 118. The prosecutor explained that the young woman he and his wife took in would have to deal with her past for the rest of her life, but how she left her family, went to school, and reached the highest levels in her sport as an athlete. *See id*. at 119.

Finally, Geier takes issue with the following statement made by the Commonwealth:

> I looked in his eyes. Remember that? I guarantee you that's true.
> I'll guarantee you that was true, and there's clarity in those eyes
> as Professor Bettig realized that his alleged friend was a murderer.

*Id*. at 137.

To succeed on an ineffectiveness claim based on trial counsel's failure to object to alleged prosecutorial misconduct, a petitioner must establish that the prosecutor's conduct resulted in the denial of petitioner's constitutional or statutory rights or otherwise denied the petitioner due process. *See Commonwealth v. Koehler*, 36 A.3d 121, 144 (Pa. 2012). "It is well-established that comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." *Commonwealth v.*

***Arrington***, 86 A.3d 831, 853 (Pa. 2014) (citation, internal quotation marks, and brackets omitted).

Moreover,

[a] prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

***Commonwealth v. Charleston***, 94 A.3d 1012, 1024 (Pa. Super. 2014) (citation omitted); ***see also Commonwealth v. Reid***, 259 A.3d 395, 429 (Pa. 2021) ("Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks.") (citation omitted). Regarding closing arguments, "a prosecutor may comment on the evidence and any reasonable inferences arising from the evidence." ***Arrington***, 86 A.3d at 853 (citation omitted).

Here, while Geier objects to three comments, she only expands on an argument regarding her manipulative nature and the jury. In raising an issue with this comment in her amended PCRA petition, Geier simply stated that this comment:

[W]as inappropriate and prejudicial, and raised the idea that Defendant's trial attorney and Defendant selected eleven men because men were capable of being manipulated by Defendant.

Amended PCRA Petition, 8/15/22, at 16. This is insufficient. As Geier failed to develop an argument for any individual comment, we agree with the PCRA

court that she failed to establish that the prosecutor's conduct resulted in the denial of a constitutional or statutory right, or that she was otherwise denied due process.

Moreover, we note that Geier cites to the above three comments completely out of context. The first two comments were made together and were part of a larger discussion of Geier attempting to manipulate others by asserting allegations of rape and using her background to generate sympathy. *See* N.T., Jury Trial Day 6, 4/23/18, at 117-120.

The third statement is not even a reference to Geier. Rather, the prosecutor was quoting from Ishler's testimony during trial. Relevantly, during his testimony, Ishler claimed that while they were at the quarry, he looked Bettig in the eyes before Bettig allegedly turned sideways and jumped to his death. *See* N.T., Jury Trial Day 5, 4/20/18, at 101-05. The prosecutor's statement directly addressed Ishler's testimony and was a fair comment on it. Further, it was consistent with the theory advanced by Geier that Ishler killed the victim.

We acknowledge that the prosecutor's comments, particularly the comments on the composition of the jury and his personal experience in helping out a young woman, were unnecessary and frankly irrelevant to whether the evidence was beyond a reasonable doubt.

However, when taken in context, these comments were only a minor part of the fairly lengthy closing argument of the prosecutor. The

Commonwealth's closing spans over thirty pages of the transcript from the final day of the jury trial. The comments on the composition of the jury and the prosecutor's personal experience in helping out a young woman make up only one page of the closing and are not referenced again.

Accordingly, while the comments were ill-considered, they do not rise to the level of unavoidably prejudicing the jury by forming in their minds a fixed bias and hostility in such a manner as to impede their ability to weigh the evidence objectively and render a true verdict when taken in context of the expansive closing argument as a whole.

Further, even if these comments were prejudicial, the jury was properly instructed that arguments of counsel were not evidence and that it was their task alone to pass upon the credibility of the witnesses. ***See*** N.T., Jury Trial Day 6, 4/23/18, at 153-54.

We commend the trial court on its comprehensive jury charge. Here, the trial judge indicated that his instructions usually take at least forty-five minutes to provide, ***see id***. at 148-49, and we believe this to be the case as the jury instructions span over fifty pages of the trial transcript. The court properly instructed the jury on the Commonwealth's burden of proof. ***See id***. at 151-53. Importantly, the court then made it abundantly clear that the jury's verdict had to be based solely on the evidence, stating as follows:

> The speeches of counsel are not part of the evidence, and you should not consider them as such. ...

> It is the right and duty of each lawyer to discuss the evidence in a manner that is most favorable to the side he or she represents. You should be guided by each lawyer's arguments to the extent they are supported by the evidence and insofar as they aid you in applying your own reason and common sense.
>
> However, you are not required to accept the arguments of any of the lawyers. It is for you and you alone to decide the case based on the evidence as it was presented from the witness stand and in accordance with the instructions I am now giving you.

N.T., Jury Trial Day 6, 4/23/18, at 153-54. The jury is presumed to have followed such instructions. *See **Commonwealth v. Thompson***, 660 A.2d 68, 76 (Pa. Super. 1995).

When taken in context, we find the prosecutor's comments did not rise to the level of unavoidably prejudicing the jury against Geier.[2] Accordingly, counsel was not ineffective for failing to object to them.

As we find none of Geier's issue merit relief, we affirm the PCRA court's dismissal of her PCRA petition without a hearing.

---

[2] We do warn the prosecutor to be more careful and mindful in the future to only make arguments that are based on the evidence. The arguments referencing the jury composition and the prosecutor's personal experience, while seemingly off-the-cuff and ultimately minor in the context of the closing as a whole, were simply irrelevant to whether the evidence was beyond a reasonable doubt. Further, for clarity sake, we remind the prosecutor that the judge and the prosecutor himself were also involved in jury selection, and therefore were also responsible for the composition of the jury.

Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/6/2024